IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| YAKOV PISMAN, | Civil No. 3:23-cv-186 |
| Petitioner | (Judge Mariani) |
| v. | |
| WARDEN R. THOMPSON, | |
| Respondent | |

**MEMORANDUM**

Petitioner Yakov Pisman ("Pisman"), an inmate confined at the Federal Correctional Institution, Allenwood, Low, in White Deer, Pennsylvania, initiated the above-captioned action by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Doc. 1). Pisman seeks an Order directing the Federal Bureau of Prisons ("BOP") to apply earned time credits under the First Step Act ("FSA"). (Doc. 1). On March 28, 2023, Respondent filed a suggestion of mootness informing the Court that Pisman has received the requested relief. (Doc. 9). Pisman's reply was due by April 11, 2023. His reply was received and docketed by the Clerk of Court on April 12, 2023. (Doc. 12). Because Pisman's reply was not received by April 11, 2023, the Court issued a Memorandum and Order dismissing the habeas petition as moot. (Docs. 10, 11).

On May 1, 2023, Pisman filed a motion pursuant to Federal Rule of Civil Procedure 59(e) contending that the Court issued its decision before considering his traverse. (Doc. 13). Pisman also filed a Notice of Appeal on June 7, 2023, which has been docketed in the

United States Court of Appeals for the Third Circuit at Docket Number 23-2048. (Docs. 14, 16; *Pisman v. Warden Allenwood FCI Low*, No. 23-2048 (3d Cir.)). On June 8, 2023, the Third Circuit issued an order staying the appeal pending this Court's disposition of Pisman's Rule 59(e) motion. *Pisman*, No. 23-2048, Doc. 4. While there is nothing in the traverse that alters this Court's prior determination dismissing the habeas petition, the Court will vacate the prior Memorandum and Order (Docs. 10, 11) and issue this Memorandum and attendant Order to reflect consideration of Pisman's submission. The Court will also deny Pisman's Rule 59(e) motion as he has not presented the Court with changes in controlling law, newly discovered evidence, or a clear error of law or fact that would necessitate a different ruling in order to prevent a manifest injustice. *See* FED. R. CIV. P. 59(e); *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010).

I.  **Factual Background**

Pisman is serving an 87-month term of imprisonment imposed by the United States District Court for the Eastern District of Missouri for money laundering offenses. (Doc. 18-1, pp. 7-10). Pisman's projected release date October 10, 2023, via First Step Act Time Credits release. (*Id.*).

Respondent submitted the Declaration of Jennifer Knepper, BOP Attorney Advisor, wherein she states that Pisman has been assessed with a minimum risk of recidivism since December 21, 2018, the effective date of the FSA. (Doc. 18-1, p. 4 ¶ 7; Doc. 18-1, p. 12). Pursuant to 28 C.F.R. § 523.42(a)(1), credits cannot be applied prior to that date. (Doc. 18-

1, p. 4 ¶ 6). To calculate time earned, inmates earn ten (10) days of FSA time credits for every thirty (30) days of successful program participation. (*Id.*). When inmates are determined to have a low or minimum risk of recidivism and maintain that rating over two (2) consecutive risk and needs assessments, they become eligible to earn an additional five (5) days of FSA time credits for every thirty (30) days of successful programming. (*Id.*).

After Pisman's second consecutive minimum assessment on June 17, 2019, he became eligible for the additional five (5) days of credit. (Doc. 18-1, p. 4 ¶ 7; Doc. 18-1, p. 12). Since June 17, 2019, Pisman has received fifteen (15) days of credit for every thirty (30) days of programming completed. (*Id.*). As a result, Pisman has earned 365 days towards early release, which has been credited to his sentence and moved his release date from October 9, 2024 to October 10, 2023. (*Id.*).

Pisman has also earned 400 days of FSA time credits towards a residential re-entry center or home confinement. (Doc. 18-1, p. 4 ¶ 8; Doc. 18-1, p. 12). Pisman alleges that his home confinement eligibility date does not reflect the credit he has earned above 365 days. (Doc. 13). On an inmate's public information inmate data, there is a home detention eligibility date, which is an automatic calculation done in accordance with 18 U.S.C. § 3624(c) authorizing the BOP to place inmates on home confinement for a period of time limited to the last ten (10) percent of the inmate's statutory term to be served, or six (6) months, whichever is less. (Doc. 18-1, p. 4 ¶ 9). Attorney Knepper clarifies that the home detention eligibility date on Pisman's public inmate profile is merely the result of that

calculation, or six (6) months of his statutory term, resulting in a home detention eligibility date of April 10, 2023—six (6) months from Pisman's October 10, 2023 projected release date. (*Id.*). She further explains that this date does not take into consideration any FSA time credits but is merely an automatic calculation based on the inmate's statutory term when he would be eligible. (*Id.*).

Pisman is a citizen of Russia and is a participant in the BOP's Institution Hearing Program, which is a coordinated effort by the BOP and Immigration and Customs Enforcement to provide deportation, exclusion, and/or removal proceedings to sentenced aliens. (Doc. 18-1, p. 5 ¶ 10). Under BOP Program Statement 7310.04, inmates who are assigned a "deportable alien" public safety status shall not participate in prerelease custody programs. (Doc. 18-1, p. 4 ¶ 10). Attorney Knepper explains that because Pisman has a "deportable alien" public safety factor, he is ineligible for a residential re-entry center or home confinement referral and his FSA time credits cannot be applied. (*Id.*).

In his § 2241 petition, Pisman seeks an Order directing the BOP to apply earned time credits under the FSA. (Doc. 1; *see also* Doc. 13). Respondent contends that Pisman's § 2241 petition must be denied because the BOP correctly computed his FSA time credits and applied the credits he has earned, and Pisman is ineligible for referral to a residential re-entry center or home confinement due to his "deportable alien" public safety factor. (Docs. 9, 18).

## II.     Discussion

The FSA allows eligible inmates who successfully complete evidence-based recidivism reduction programs or productive activities to receive time credits to be applied toward time in prerelease custody or supervised release. *See* 18 U.S.C. § 3632(d)(4)(A), (C). An inmate can earn ten (10) days of credit for every thirty (30) days of successful participation. *See id.* § 3632(d)(4)(A)(i). Furthermore, eligible inmates assessed at a minimum or low risk of recidivism who do not increase their risk of recidivism over two (2) consecutive assessments may earn five (5) additional days of time credit for every thirty (30) days of successful participation, for a total of fifteen (15) days' time credit per thirty (30) days' successful participation. *See id.* § 3632(d)(4)(A)(ii).

Under the FSA, a prisoner is entitled to immediate placement in prerelease custody (either in a residential reentry center or in home confinement) when he has earned FSA time credits in an amount equal to the remainder of his imposed prison term, provided he has been found to pose a minimum or low recidivism risk in his last two (2) assessments. *See* 18 U.S.C. § 3632(d)(4)(C) (providing that FSA time credits "shall be applied toward time in prerelease custody or supervised release."). In addition, the FSA has provided an opportunity for a prisoner to obtain an early transfer to supervised release. Under the FSA, a prisoner is eligible to be released from confinement and to commence his term of supervised release up to twelve (12) months early, at the discretion of the BOP, provided he has been found to pose a minimum or low recidivism risk in his last assessment. *See id.* §

5

3624(g)(3) (providing that the BOP "may transfer [an eligible prisoner sentenced to serve a term of supervised release after imprisonment] to begin any such term of supervised release at an earlier date, not to exceed 12 months, based on the application of [FSA] time credits."). However, the BOP's regulations exclude from consideration for early release inmates who fall into certain categories. Relevant here, inmates "who are assigned a 'Deportable Alien' Public Safety Factor…shall not ordinarily participate in CCC programs" under Program Statement 7310.04, ¶ 10(b).

Applying these principles here, the Court finds that the BOP properly calculated and applied the FSA time credits to Pisman's sentence. On May 28, 2023, the BOP conducted an FSA Time Credit Assessment and applied 365 days of earned time credits towards Pisman's early release. (Doc. 18-1, p. 12). Based on this calculation, Pisman's projected release date changed from October 9, 2024, to October 10, 2023. (*Id.*). Pisman also earned 400 days towards a residential re-entry center or in home confinement. (Doc. 18-1, p. 12). It is undisputed that Pisman has a "deportable alien" public safety factor. (Doc. 18-1, pp. 14, 17-18). Because Pisman has a "deportable alien" public safety factor, he is ineligible for a residential re-entry center or home confinement referral and his FSA time credits cannot be applied. Thus, Pisman's § 2241 petition must be denied.

## III.   Conclusion

The Court will deny Pisman's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  A separate Order shall issue.

						_____
						Robert D. Mariani
						United States District Judge

Dated: June 15, 2023